Southard J.
The facts upon which, Juliann SparJcs founded her right, to obtain possession of the premises in - question were; that a certain George Goff, was seized in fee and possessed of the said premises; that on the tenth of October 1815, he did, by deed, lease the same to Henry Sparks, the then husband of said plaintiff, for the term of five years, to commence on the 15th day of March then next; that the said Henry Sparks, devised by his last will and testament, all his right in said lease to the plaintiff, whereby she became, on his death, entitled to the possession of the premises ; but that the defendant held and kept possession thereof, with force, &c. from the said 15th of March to the day of bringing the suit, &c.
On the trial the plaintiff confessed and admitted that neither Henry Sparks nor herself, ever was in possession of the premises; that Stephen Hutchinson possessed them, at the time, when the lease was executed, and until the 21st of March 1816, at which time the defendant came into the possession, peaceably, by virtue of a deed from Goff, conveying tlieland to him. This deed was read to the jury, by the consent of the plaintiff. It bears date on the 1st February 1816. After this admission and evidence, the defendant offered to prove, that after the death of her husband Henry Sparks, (which was prior to the date of Goff’s deed to him) the complainant had renounced the lease, and expressly refused to have any thing to do with the premises, and that in consequence of her refusal, the defendant bought and received the deed. This evidence was overruled by the court, as he states, upon the ground that it contradicted the written lease. Several witnesses were sworn and other evidence offered and received. The jury found a verdict that the defendant was guilty of the forcible detainer, &c. The justice gave judgment that the said Juliann Sparks do have restitution of the possession of the said messuage, &c. and also that she recover 54 dollars, 49 cents, being the treble costs, &c. As soon as the verdict was rendered and the judgment pronounced, the attorney of the defendant took from his pocket, a writ of certiorari to remove the proceedings and judgment into the Supreme Court. This writ was regularly endorsed with the allocatur of a judge residing many miles *distant. *594 The justice therefore supposing that it had been illegally - granted, as it must have been issued before judgment was given, paid no attention to it, but upon the request of the plaintiff, granted a writ of restitution, which was delivered to the sheriff and by him executed and plaintiff put in possession.
Six reasons for a reversal have been argued, arising from the proceedings so far as they appear upon the record, and the facts thus far detailed ; and one additional reason has been warmly pressed, arising from the conduct of the sheriff, the court and the agent of the plaintiff, in selecting the jury. I will endeavour to notice each of them, in their order.
1. It is said, that the complainant below, Juliann Sparks, never was in possession of the premises, and cannot therefore maintion this action. I apprehend that this reason is well founded. That the plaintiff in forcible entry, or forcible detainer, must have either a possession in fact or law, to maintain his suit, is too manifest to require argument or authority to prove. A mere claim or right of possession, will not be sufficient; it must be a right in possession, which is disturbed and for which the action is brought. In the present case, the right of Juliann Sparks, arose solely from the will of her husband, devising his right in the lease to her. Neither of them had any possession at any time. The owner of the premises had agreed that Henry Sparks should possess them. Will a refusal to comply with his agreement, authorise this action ? Clearly not. For such an injury, a remedy must be sought, in another kind of action.
2. There was no evidence of force, of any description, used by the defendant. However necessary a constituent in this action, force may be, the propriety of this reason may'well be questioned. We are not to presume, as was argued, that the whole evidence was spread by the justice upon his record. He is not bound to do so; and although part of it is there, yet he does not assure us that he has given all; on the contrary, it is manifest that he has not. Several witnesses were sworn, whose testimony is not detailed. They may have proved what the counsel require.
3. The defendant below offered to prove that the plain *595 tiff had given up the lease, and declared that she would have nothing to do with it; and that in consequence of this conduct on her part, he had been induced to buy the premises, and had bought them. The justice refused to permit him to prove this, and in doing so *he erred. A party may surrender a lease by parol; and after he has so surrendered it, he can have no right of entry on the demised premises. Besides, if the fact be as the defendant offered to shew it, then I think it is perfectly clear, that that fact, taken in connexion with the date of the deed) (1st February 1816) of the lease (10th October 1815,) of the commencement of the term (15th March 1816) and of the entry of the defendant, (21st March 1816) all shew a consent, on the part of the plaintiff, that defendant should enter and possess the premises; and if so, the detainer could not be forcible or unlawful. The evidence seems to be essential to the true understanding of the rights of the parties. The reason which the justice assigns for overruling it, is, that it contradicted the written lease. But I apprehend that he has misapplied a correct legal principle. Though it he true, that you may not contradict or alter a written agreement, by parol, yet it is equally true that you may shew that a written lease has been given up, destroyed, and vacated by a subsequent agreement. Here the evidence offered does not alter or contradict the lease. It expressly admits its existence; its force; its meaning ; but it avoids its operation by subsequent matters. And it ought to have been admitted ; especially in this case, wrhere the plaintiff complained that the defendant had forcibly and illegally detained the premises from her rightful possession.
4. The writ of restitution was issued after the writ of certiorari was presented to the justice. This is true in fact. The certiorari was handed to the justice as soon as the verdict was rendered and the judgment pronounced, and before he had completed his record: and the legal effect is not to be doubted. The writ of certiorari issuing out of this court and directed to the Court for the trial of Small Causes, is, in its nature and effect, a supercedeas, and ought to stay all further proceedings in the cause. After it is received, the justice has no right to take any *596 proceeding, or to issue any writ. If he do, he subjects himself to an attachment for contempt; and the records of this court shew at least one instance in which the attachment has been granted and the justice punished, for issuing an execution upon a judgment which had been removed hither, by that writ. Nor is it the duty of the justice to canvass and decide how far it was legally issued. He has no power to determine that matter; it rests with another tribunal. It is enough for him, that it appears to be in proper form, *and with the allocatur endorsed upon it by a justice of the Supreme Court. It is to be regretted, that justices, no doubt with the most correct intentions, often do proceed, and require a writ of supercedeas, before they stay their further progress in the cause. Such a course is contrary to law, and productive of much inconvenience to parties. In the present case, the justice ought to have entered his judgment; refused the writ of restitution which was applied for, and made return to this court, out of which the certiorari issued. But although this would have been the legal and regular proceeding, yet I do not perceive any other ground of censure than always exists, where a court errs in judgment upon a point of law. The distance at which the judge lived who granted the allocatur ; the time and manner of presenting the writ; were not a little calculated to lead him into the error he committed. He no doubt perceived that it must necessarily have been issued before the judgment was rendered which it was designed to • remove, and it is not strange that he should suppose it was therefore illegal. It has, however, often been decided, that a writ of certiorari, so allowed, will be sustained. N. Jer. Rep. 369. But were the conduct of the justice, on this point, ever so erroneous, it would furnish no ground for reversing this judgment. It cannot vitiate the previous proceedings; and all the benefit which the plaintiff in certiorari could derive from it, would be to have the writ of restitution set aside, and be restored to the situation in which he was when judgment was pronounced.
5. The costs were taxed ; then multiplied by three, and the execution issued for the amount; whereas it is contended that it should have been for the whole, one half, *597 and one quarter of the bill, added together. This reason, if true in law, will only vitiate the judgment so far as relates to the costs, but will not destroy it altogether. But I apprehend it is not true in law. I am aware that such a mode of calculating the costs has been adopted, in some cases, under the British statutes: but I do not think that either the plain words of our law, or the mode of calculation which has always been in use here, in cases of double and treble costs, will justify us in following the English rule on this subject. The justice calculated them correctly.
6. There is only a judgment of restitution, but no judgment of detainer, and therefore it is void. The verdict found the unlawful and forcible detainer, and that the defendant was guilty. *The judgment which followed, appears to me sufficient for all just or legal purposes in that court.
7. The last reason which engaged the attention of the counsel, was, that the jury, was corruptly selected by the sheriff, with the knowledge of the court, at the dictation of the agent of the plaintiff below. Much excitement seemed to be felt by the counsel, in the investigation of this reason. They seemed to consider the whole case, as exhibiting a high-handed violation of law and justice, by the public officers who were concerned in it. The court have therefore looked, Avith care, into the bundle of affidavits Avhich were taken on the part of the plaintiff in certiorari, and supposed to sustain this reason. We have not seen those which wyere taken on the part of the defendant; nor was it necessary that we should see them. The fact is not established by the proof offered by the plaintiff. There appears to be no just or reasonable ground for accusation, against the party or officers on this point. I do not think it important to give a summary of the affidavits. It is sufficient to say, that so far as the case is before us, the conduct of the party, the sheriff, and the justice, seem to have been open,public, and legal; not derogatory to their characters as correct and just men.
For the first and third reasons, therefore, I think there must be a reversal of the judgment. Upon the rest, there *598 is no legal cause of complaint; and of this opinion are the whole court.
Judgment reversed.